UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LELA LOGAN, Individually and on behalf of her minor child L.L. | CIVIL ACTION |
| VERSUS | 19-14671 |
| NEW ORLEANS POLICE DEPARTMENT, ET AL. | SECTION: "J" (1) |

### ORDER & REASONS

Before the Court are a *Motion to Dismiss for Lack of Subject Matter Jurisdiction* **(Rec. Doc. 43)** filed by Defendant Morris Jeff Community School ("Morris Jeff") and an opposition thereto (Rec. Doc. 49) filed by Plaintiff Lela Logan. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

Lela Logan's son, L.L., is a minor who was diagnosed with disruptive mood dysregulation disorder, attention deficit hyperactivity disorder, impulse disorder, oppositional defiant disorder, and kleptomania at a young age. L.L. began attending Morris Jeff as a sophomore in 2018 and quickly began receiving discipline for behavioral infractions; in August 2018, he received a three-day out-of-school suspension. On October 1, 2018, Plaintiff requested an Individual Education Program ("IEP") evaluation for L.L.'s mental health and behavioral issues. The school implemented temporary support measures to assist L.L. until a full IEP could be

developed, which the school completed on November 9, 2018. As part of his IEP, a Behavioral Intervention Plan ("BIP") was developed to determine problem-solving strategies to address L.L.'s behavioral issues. Despite these measures, L.L. received five additional one-day suspensions during October and November 2018 for several other behavior-related incidents at the school.

On December 19, 2018, officials at Morris Jeff discovered that L.L. had taken a Christmas gift from an administrator's desk and hidden it in a bathroom. L.L. was removed from his classroom and brought to the school's intervention room, at which point he became upset, started yelling, and ran out into the school. A school security officer physically restrained L.L. and placed him in the library, where he began throwing books, chairs, and other items.

Morris Jeff contacted the police to assist school officials in dealing with L.L. and called Plaintiff to inform her about the ongoing incident. When Officer Karl Marshall of the New Orleans Police Department entered the library, he placed L.L. in handcuffs and escorted him out of the school. On the way out, L.L. cursed at the school's principal and spat in her face. When Plaintiff arrived and attempted to calm her son, Officer Marshall asked her to step back and L.L. spat in his face. Finally, while putting L.L. into the back of the police car, L.L. again spat in Officer Marshall's face, and Officer Marshall allegedly responded by striking L.L. Following the incident, L.L. was taken to the hospital and later admitted for ten months for behavioral health treatment. Plaintiff officially unenrolled L.L. from Morris Jeff in January 2019.

Plaintiff filed suit against Morris Jeff on April 1, 2020 to recover damages available under section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), for negligent implementation of the BIP, and for breach of the IEP contract. The Court dismissed Plaintiff's claims against Officer Marshall, New Orleans Police Superintendent Shaun Ferguson, and the City of New Orleans, finding that Officer Marshall was entitled to qualified immunity and that Plaintiff failed to state a claim for municipal liability. Morris Jeff then filed the instant motion to dismiss, which is before the Court on the briefs without oral argument.

## **LEGAL STANDARD**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider

3

the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### I.  RELEVANT LAW

The Individuals with Disabilities Education Act ("IDEA") offers federal funding to states conditioned on the provision of a "free appropriate public education" ("FAPE") to all children with certain disabilities. 20 U.S.C. § 1412. A FAPE is defined by the statute as "special education and related services." *Id.* § 1401(9). Parents who

4

are unhappy with the education provided to their child are required to exhaust the IDEA's administrative process before taking their grievances to federal court. *Id.* § 1415(i)(2)(A). This process includes the opportunity to file a complaint triggering a preliminary hearing, § 1415(b)(6), followed by a due process hearing conducted by a neutral hearing officer, § 1415(f), and the option of mediation at state expense, §§ 1415(e)(1), (2)(D).

This exhaustion requirement is not limited only to IDEA claims: "[B]efore the filing of a civil action under such laws [as the Americans with Disabilities Act ("ADA") and Rehabilitation Act] seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." § 1415(l). Put another way, a party is free to pursue claims apart from the IDEA, but they must exhaust the IDEA's remedial process for any such claims that include relief the IDEA can provide. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019) ("[A] plaintiff may invoke any federal law to support a disabled student's claim for an adequate education; the plaintiff just must first exhaust under the IDEA."). The availability of such relief turns on whether a FAPE is at issue. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753 (2017) ("The only relief that an IDEA officer can give—hence the thing a plaintiff must seek in order to trigger § 1415(l)'s exhaustion rule—is relief for the denial of a FAPE.").

5

## II. ANALYSIS

To determine whether a claim arises out of the denial of a FAPE, courts must determine whether "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 137 S. Ct. at 755. Although courts should ignore "attempts at artful pleading" by focusing on the "substance" of the complaint rather than mere "labels," *id.*, courts should use "the 'plaintiff's own claims,' as he controls the complaint and the attendant relief sought," *Heston ex rel. A.H. v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 981 (5th Cir. 2020) (per curiam) (quoting *Fry*, 137 S. Ct. at 755). In *Fry*, the Supreme Court suggested two "hypothetical questions" that confirm that the gravamen of the complaint concerns a FAPE. First, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756.

In *Heston,* the Fifth Circuit had to determine whether the plaintiffs' claim arising from the allegedly inadequate training of the support staff assigned to assist their child during the school day primarily dealt with the denial of a FAPE. 816 F. App'x at 979-80. The plaintiffs' child had been diagnosed with autism, ADHD, and bipolar disorder and had an IEP provided by his school that included support staff to accompany and assist him throughout the day. *Id.* at 979. Despite the plaintiffs repeatedly requesting a new special education aide, the school refused until the

6

child's aide responded to an emotional breakdown by throwing a trash can at the child, causing significant physical injuries. *Id.* Initially, the plaintiffs sought relief through a due process hearing under the IDEA, which culminated in a settlement where the school would pay for tuition at a nearby private school and the plaintiffs would drop any complaints related to the IDEA. *Id.* at 979-980. After the settlement, the plaintiffs filed a complaint raising ADA and Rehabilitation Act claims, which the district court dismissed, finding that the claims related to the child's educational needs and therefore required exhaustion of the IDEA's administrative procedures. *Id.* at 980.

Because the claims derived from the school's failure to provide a FAPE, the court affirmed the district court's dismissal. *Id.* at 981-982. The plaintiffs' complaint focused on the school's failure to properly train and supervise the special education aide, which was the focal point of the IEP developed by the school. *Id.* The court applied the hypothetical questions from *Fry* and concluded that the plaintiffs would not be able to bring the same claims had the same incident occurred in another public place because "those facilities are not required to accommodate a learning disability by providing a trained and supervised aide." *Id.* at 982. The court also concluded that an adult present at the school would not have a claim under the ADA or Rehabilitation Act for the same reason. *Id.* Accordingly, the court held that the claims arose from the denial of a FAPE and affirmed the District Court's dismissal for lack of subject matter jurisdiction.

Here, Plaintiff's claims against Morris Jeff all derive from the school removing L.L. from the learning environment or from not following through with the BIP. In Plaintiff's Second Supplemental and Amended Complaint, the ADA and Rehabilitation Act claims focus on the fact that Morris Jeff "excluded L.L. from the academic environment because of his disability."[1] Specifically, Plaintiff's contention that "L.L. was excluded from the academic environment [for] over ten (10) days by Morris Jeff"[2] alleges a violation of the IDEA's Ten Day Rule. *See* 20 U.S.C. § 1415(k)(1)(B). Because L.L.'s removal from the school is essentially the denial of a FAPE, these claims are subject to the IDEA's exhaustion requirement.

The remaining claims concern Morris Jeff's failure to implement a BIP under both negligence and breach of contract theories. However, the BIP is a part of L.L.'s IEP, which is "the 'primary vehicle' for providing each child with [a] FAPE." *Fry*, 137 S. Ct. at 749 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Therefore, these claims were also subject to exhaustion.

Finally, the two hypothetical questions from *Fry* favor the dismissal of Plaintiff's claims. If L.L. had been removed from a public library or theater, Plaintiff would not have a claim because those institutions are not required to provide patrons with behavioral exceptionalities with a BIP. An adult visitor would have no claim under the ADA or the Rehabilitation Act for the same reason. *See Heston*, 816 F. App'x at 981. ("A.H. would have no claim for failure to accommodate in a public theater or library because those facilities are not required to accommodate a learning

---

[1] (Rec. Doc. 29, at 6-7).
[2] *Id.* at 7.

8

disability by providing a trained and supervised aide. An adult visitor would have no claim under the ADA or Rehabilitation Act for the same reason"). Accordingly, the gravamen of Plaintiff's claims against Morris Jeff involve the denial of a FAPE, and Plaintiff was required to exhaust the administrative procedures available under the IDEA before seeking relief in this Court.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Morris Jeff's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* **(Rec. Doc. 43)** is **GRANTED**, and Plaintiff's claims against Morris Jeff are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 15th day of April, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE